O
JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEN BOOGARD; JOANNE BOOGARD; and THE ESTATE OF DEREK BOOGAARD,<br><br>                    Plaintiffs,<br><br>     v.<br><br>THE NATIONAL HOCKEY LEAGUE PLAYERS ASSOCIATION; ROMAN STOYKEWYCH; and DOES 1 through 50, inclusive,<br><br>                    Defendants. | Case No. 2:12-cv-9128-ODW(FFM)<br><br>**ORDER GRANTING DEFENDANTS' CONVERTED MOTION FOR SUMMARY JUDGMENT [19] AND DENYING MOTION TO WITHDRAW [31]** |

## I.  INTRODUCTION

Derek Boogaard, a former New York Rangers hockey player, died tragically on May 13, 2011.[1] At the time of his death, Boogaard still had three seasons remaining on his contract with the Rangers. When the National Hockey League Players Association ("NHLPA") refused to file a grievance for the remaining compensation under the contract, Boogaard's estate and his parents Len and Joanne Boogaard brought suit. Plaintiffs assert that NHLPA breached its duty of fair representation by failing to file a grievance with the National Hockey League. Defendants filed a Motion to Dismiss with this Court on the grounds that the duty-of-fair-representation

---

[1] The Court is informed that the spelling of "Boogard" in the case caption is incorrect. The correct spelling is "Boogaard."

claim is barred by the six-month statute of limitations. (ECF No. 19.) Upon review of the parties' arguments and evidence, the Court found it necessary to convert Defendants' Motion to Dismiss into a motion for summary judgment under Federal Rule of Civil Procedure 12(d), because the issue of equitable tolling requires findings of fact beyond the pleadings. (ECF No. 29.) For the reasons explained below, NHLPA's converted motion for summary judgment is **GRANTED**.[2]

## II.   BACKGROUND

Boogaard entered into a guaranteed four-year standard player contract to play with the New York Rangers for the 2010–2014 seasons.[3] (FAC ¶ 9.) Boogaard was a member of the NHLPA. (FAC ¶ 8.) NHLPA and the National Hockey League ("NHL") have in place a collective bargaining agreement ("CBA").[4] (FAC ¶¶ 1, 3.)

During his professional hockey career, Boogaard became addicted to the narcotics and sleeping pills prescribed to him for his hockey-related injuries. (FAC ¶ 10.) Plaintiffs allege that the team doctors and trainers prescribed these drugs recklessly, knowing that he was addicted. (*Id.*) Boogaard died in his sleep on May 13, 2011, from a mixture of drugs and alcohol. (FAC ¶ 12.) At Boogaard's death, three seasons remained under his contract. (Opp'n 10.)

Roman Stoykewych, associate counsel for NHLPA, contacted Plaintiffs on July 1, 2011, regarding their rights of compensation under Boogaard's contract, insurance payments, and other rights under the CBA. (FAC ¶ 13.) Stoykewych was Plaintiffs' primary contact with NHLPA, and their communications continued through December 2011. (*See* FAC ¶ 22.)

NHLPA learned that the New York Rangers would not be paying anything further on Boogaard's contract on July 27, 2011. (FAC ¶ 14.) Stoykewych

---

[2] Having considered the papers filed in support of and in opposition to this motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

[3] "Guaranteed contracts" provide that a player receives compensation even if the player is cut from the team, injured, or disabled and unable to play. (Opp'n 10.)

[4] This CBA was in effect at all times relevant to this proceeding. (Stoykewych Decl. Ex. 1).

immediately contacted the commissioner of the NHL to obtain documentation, including Boogaard's medical records, to be used as evidence in a possible grievance to enforce compensation payment. (*Id.*; FAC Ex. A.)

Under the CBA, a complaint for the failure to pay a player's compensation must be heard by way of a grievance, which can only be initiated by NHL or NHLPA. (FAC ¶¶ 15, 16). NHLPA had sixty days from the Rangers' notice of refusal to pay to file a grievance with NHL. (FAC ¶ 17.) Plaintiffs allege NHLPA failed to file a grievance in that period and never informed them of the sixty-day filing period. (FAC ¶¶ 18, 21.)

In October 2011, after the expiration of the sixty-day period, Stoykewych updated Plaintiffs via email about the NHL-NHLPA treatment facility's refusal to disclose medical records without a court order. (FAC ¶ 20.) Stoykewych informed Plaintiffs that NHL was freezing them out and that NHLPA would have to take legal action against the doctor refusing to produce Boogaard's medical records. (*Id.*) The correspondence between Stoykewych and Plaintiffs regarding NHLPA's progress continued through November 2011. (Opp'n 2.)

Stoykewych finally notified Plaintiffs in a letter dated December 2, 2011, that NHLPA had concluded that no viable grievance could be prosecuted and thus, would not pursue a grievance for the payout of the remainder of Boogaard's contract. (Stoykewych Decl. ¶ 6, Ex. 3.) Stoykewych never advised Plaintiffs that if they believed NHLPA had acted arbitrarily or in bad faith in failing to pursue a grievance, they would have six months to bring a breach of duty of fair representation claim ("DFR claim"). (FAC ¶ 21.) In a follow-up letter, Stoykewych advised Plaintiffs to investigate a potential workers'-compensation claim, informed them about the statute of limitations for such a workers'-compensation claim, and referred them to a workers'-compensation attorney. (Boogaard Decl. Ex. E.)

Plaintiffs believed that Stoykewych was acting as their legal counsel at all times. (FAC ¶ 30.) They relied upon Stoykewych's advice and contacted the

workers'-compensation attorney he recommended. (Boogaard Decl. ¶ 16.) They received no response. (*Id.*) Plaintiffs then asked NHLPA to recommend a second attorney, who ultimately referred them to a third attorney. (*Id.*) Finally, in July 2012, Plaintiffs retained counsel. (Opp'n 4.) Plaintiffs filed the Complaint on September 21, 2012, alleging that NHLPA breached its duty of fair representation in the handling of the CBA grievance concerning Boogaard's Rangers contract. (FAC ¶¶ 24–28.)

### III. LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial. *Id.*; Fed. R. Civ. P. 56(c). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

/ / /

# IV. DISCUSSION

## A. The statute of limitations has expired

Defendants' DFR claim is governed by a six-month federal statute of limitations. 29 U.S.C. § 160(b); *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 154–55 (1983). For a DFR claim based on a union's decision not to pursue a grievance, the limitations period begins to run when a plaintiff learns or should have learned about the union's decision. *Stone v. Writer's Guild of Am. W., Inc.*, 101 F.3d 1312, 1314 (9th Cir. 1996).

NHLPA notified Plaintiffs in writing that it would not be pursuing a grievance with the NHL on December 2, 2011. (Stoykewych Decl. Ex. 3.) Thus, the six-month limitation period expired six months later on June 2, 2012. Plaintiffs filed the Complaint in state court on September 21, 2012, more than three months after the statute of limitations had expired. (ECF No. 17.) The parties do not dispute that Plaintiffs' DFR claim is governed by a six-month statute of limitations, nor do they dispute that the limitations period has expired. Rather, Plaintiffs contend that the statute of limitations should be equitably tolled. (Opp'n 5.)

## B. Equitable tolling does not apply

Equitable tolling may be invoked to excuse a failure to comply with time limitations where a claimant had neither actual nor constructive notice of the filing period. *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002). A litigant seeking equitable tolling bears the burden of establishing two elements: that he has been pursuing his rights diligently; and that some extraordinary circumstance stood in his way. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Courts apply equitable tolling sparingly and only in extreme situations. *See Socop-Gonzalez v. INS*, 272 F.3d 1176, 1193 (9th Cir. 2001). A party's lack of legal sophistication is never itself sufficient. *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006). Additionally, there is no duty to inform potential claimants of the six-month statute-of-limitations period for DFR claims, and the failure to do so does not

toll a DFR claim. *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1050 (9th Cir. 1987).

The application of the doctrine of equitable tolling has generally been limited to extreme situations, such as where: the claimant was tricked into letting a deadline expire; the EEOC's notice of the statutory period following a claim dismissal was clearly inadequate; or the claimant suffers from mental incapacity. *See e.g.*, *Scholar v. Pac. Bell*, 963 F.2d 264, 268 (9th Cir. 1992); *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999). Courts have been unforgiving, however, when a late filing is due to a claimant's failure to exercise due diligence in preserving his legal rights. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect.").

Plaintiffs contend that the complaint should be deemed timely under the doctrine of equitable tolling, because they (1) lacked counsel and were ignorant of the filing period and (2) were affirmatively led away from the DFR claim by advice from Stoykewych. (Opp'n 6–7.) These two arguments are better handled when under the lens of the two required elements for equitable tolling: diligence and extraordinary circumstance. *Pace*, 544 U.S. at 418.

*1.     Plaintiffs fail to demonstrate their diligence*

By contending that they lacked counsel, were ignorant of the filing period, and were affirmatively led away from the DFR claim by Stoykewych's advice, Plaintiffs essentially concede that they did not pursue their rights diligently.

But Plaintiffs argue they were reasonably diligent because they attempted to get in contact with two attorneys the union recommended, but were ignored. (Opp'n 6.) But this showing of diligence is weak—Plaintiffs were seeking attorneys for a workers'-compensation claim, not a DFR claim against NHLPA. (Boogaard Decl. Ex. E.) Additionally, their quest for an attorney was lackluster at best. Though Plaintiffs were unable to retain either of the two attorneys NHLPA recommended, Plaintiffs took over seven months to finally retain an attorney. This drawn-out

1 attorney search suggests Plaintiffs did not act diligently. Other than this, Plaintiffs state no facts supporting their assertion that they acted diligently during the relevant period.

It is conceivable that Plaintiffs were entirely ignorant of the filing period for a DFR claim, or even the possibility of a DFR claim against NHLPA. This ignorance goes to the reason why Plaintiffs cannot show that they were diligent—they simply didn't know.

But unfortunately, they did know—they had constructive knowledge. The Estate of Derek Boogaard retained counsel, Fredrikson & Byron, P.A., between June 2011 and April 2012, for the probate process. (Hudson-Plush Decl. Exs. 2–5.) This retainer of counsel eliminates tolling (at least for this time period) because Plaintiffs gained the means of knowledge of their rights through their counsel. *Leorna v. U.S. Dep't of State*, 105 F.3d 548, 551 (9th Cir. 1997). Plaintiffs set forth no legal or factual basis to suggest that their representation by Fredrikson & Byron could not impute to them constructive knowledge of the statute of limitations for the DFR claim. Thus, Plaintiffs are charged with having constructive knowledge of the six-month statute of limitations by virtue of having retained counsel.

And because Plaintiffs are charged with knowledge of the applicable statute of limitations, they must show that they were diligently pursuing the DFR claim throughout this period. But as discussed, the evidence suggests they were not.

2. *No extraordinary circumstance prevented Plaintiffs from timely filing suit*

Notwithstanding the lack of diligence, Plaintiffs assert that their lack of counsel, their ignorance of the statute of limitations, and Stoykewych's actions were extraordinary circumstances sufficient to invoke equitable tolling. (Opp'n 6–7.) The Court finds otherwise.

First, Plaintiffs' lack of counsel argument has no merit. As discussed above, the Estate of Derek Boogaard retained Fredrikson & Byron, P.A., between June 2011 and April 2012, for the probate process. (Hudson-Plush Decl. Exs. 2–5.) And though

Fredrikson & Byron were hired for probate, Plaintiffs offer no reason why Fredrikson & Byron could not have pursued the DFR claim on Plaintiffs' behalf. And even if Plaintiffs did not have counsel, lack of counsel does not warrant equitable tolling. *Rasberry*, 448 F.3d at 1154 ("[A] pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling.").

Second, lack of knowledge of the applicable statute of limitations is insufficient to invoke equitable tolling—indeed, NHLPA had no duty to inform Plaintiffs of the six-month statute of limitations. *Rasberry*, 448 F.3d at 1154; *Stallcop*, 820 F.2d at 1050. Plaintiffs' ignorance of the statute of limitations is not an extraordinary circumstance and plays no part in the equitable-tolling analysis.

Third, there is little evidence suggesting that Stoykewych's actions affirmatively misled Plaintiffs in any way. Plaintiffs stress that Stoykewych (1) failed to inform them of the six-month limitations period, (2) led them to believe that he was acting as their attorney, and (3) led them away from the DFR claim by recommending they pursue a workers' compensation claim. (Opp'n 7.)

The evidence shows that Stoykewych's actions and correspondence with Plaintiffs were within his role as a union representative for NHLPA. Nothing suggests that Stoykewych rendered any legal advice to the Plaintiffs, advised them that he was acting as their attorney, or acted in a way so as to indicate that he was representing anyone but NHLPA. (*See* Boogaard Decl. Ex. A–E.) And as discussed above, Stoykewych had no duty to inform Plaintiffs of the six-month statute of limitations. *Rasberry*, 448 F.3d at 1154

Stoykewych was at all times, on behalf of the NHLPA, evaluating a potential grievance against the New York Rangers for failing to pay Boogaard's remaining contract. An attorney handling a grievance on behalf of a union does not enter into an attorney-client relationship with the member asserting the underlying grievance; their client is the union. *Peterson v. Kennedy*, 771 F.2d 1244, 1258 (9th Cir. 1985). And even if Plaintiffs initially believed that Stoykewych was acting on their behalf, they

could not rest on that assumption forever. When Stoykewych informed them that NHLPA decided not to pursue a grievance, Plaintiffs should have known then that Stoykewych was no longer representing their interests (if he did at all). Any further reliance on Stoykewych beyond December 2, 2011, was unreasonable.

Finally, Plaintiffs' reliance on Stoykewych's advice to pursue a claim for workers' compensation does not demonstrate that they were affirmatively misled. Stoykewych had no duty to inform Plaintiffs of a potential DFR claim or its six-month statute of limitations. Moreover, by directing them to consider a possible workers'-compensation claim, Stoykewych made it clear that he was not giving legal advice—he told Plaintiffs to hire their own lawyer. (Boogaard Decl. Ex. E.)

None of the reasons Plaintiffs provided qualify as an extraordinary circumstance that prevented Plaintiffs from timely filing suit. Even when these reasons are considered in totality, they still do not demonstrate an extraordinary circumstance.

## V. CONCLUSION

Based on the discussion above, the Court finds that equitable tolling does not apply and Plaintiffs' DFR claim is barred by the six-month statute of limitations. Therefore, Defendants' Converted Motion for Summary Judgment is **GRANTED**. (ECF No. 19.) This case is **DISMISSED WITH PREJUDICE**.

Because this case is dismissed, the Court sees no reason to consider the pending Motion to Withdraw filed by Plaintiffs' attorney on March 15, 2013. Thus, the Motion to Withdraw is **DENIED AS MOOT**. (ECF No. 31.)

**IT IS SO ORDERED.**

March 20, 2013

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**